# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **G.M.,** a minor, ) | **CASE NO.:** |
| by Nail Majid and Amany Ahmad, ) | |
| parents and next friends of G.M., ) | **JUDGE** |
| 3700 Warrant Meadville Road, ) | |
| Cortland, Ohio 44410 ) | |
| ) | **COMPLAINT** |
| and ) | |
| ) | **Jury Demand Endorsed Hereon** |
| **NAIL MAJID,** ) | |
| 3700 Warrant Meadville Road, ) | |
| Cortland, Ohio 44410 ) | |
| ) | |
| and ) | |
| ) | |
| **AMANY AHMAD,** ) | |
| 3700 Warrant Meadville Road, ) | |
| Cortland, Ohio 44410 ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **LAKEVIEW LOCAL SCHOOL** ) | |
| **DISTRICT,** ) | |
| 300 Hillman Drive ) | |
| Cortland, Ohio 44410, ) | |
| ) | |
| and ) | |
| ) | |
| **LAKEVIEW LOCAL SCHOOL** ) | |
| **DISTRICT BOARD OF** ) | |
| **EDUCATION,** ) | |
| 300 Hillman Drive ) | |
| Cortland, Ohio 44410, ) | |
| ) | |
| and ) | |
| ) | |
| **KARA KASULA,** ) | |
| 300 Hillman Drive ) | |
| Cortland, Ohio 44410, ) | |
| ) | |
| and ) | |
| ) | |
| **ALEX DEAN,** ) | |
| 300 Hillman Drive ) | |

| | |
|---|---|
| Cortland, Ohio 44410, | ) |
| | ) |
| and | ) |
| | ) |
| **NANCY SANDRELLA,** | ) |
| 300 Hillman Drive | ) |
| Cortland, Ohio 44410, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Now come Plaintiffs Nail Majid, Amany Ahmad, and G.M., by and through undersigned counsel, and hereby state the following for their Complaint:

### PARTIES

1. Nail Majid and Amany Ahmad are the natural parents of G.M., and reside at 3700 Warrant Meadville Road, Cortland, Ohio 44410.

2. G.M. is currently 11 years old, lives with his parents and attends Lakeview Elementary School.

3. During all relevant times discussed herein, G.M. was 10 years old.

4. G.M. has darker skin and hair, is of Palestinian heritage, and is Muslim.

5. Defendant Lakeview Local School District (hereinafter "the District") is a political subdivision of the State of Ohio and has its principal place of business at 300 Hillman Drive, Cortland, Ohio 44410.

6. Defendant Lakeview Local School District Board of Education (the "Board"), with its principal place of business located at 300 Hillman Drive, Cortland, OH 44410, is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the District.

7. Defendant Kara Kasula is a teacher for the District and her place of employment is located at 300 Hillman Drive, Cortland, Ohio 44410.

8. Defendant Alex Dean was a student teacher for the District during the relevant time periods and her place of employment was located at 300 Hillman Drive, Cortland, Ohio 44410.

9. Defendant Nancy Sandrella is a student nurse for the District and her place of employment is located at 300 Hillman Drive, Cortland, Ohio 44410.

## JURISDICTION & VENUE

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343. Claims are asserted pursuant to 42 U.S.C. §§1983 and Title VI of the 1964 Civil Rights Act. Supplemental state claims are asserted pursuant to 28 §§U.S.C. 2201 and 2202, as well as state statutes and common law.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b) as the events that gave rise to this action occurred in Trumbull County, State of Ohio, which lies in the jurisdictional boundaries of the United States District Court, Northern District of Ohio.

## GENERAL ALLEGATIONS

### The November 2, 2018 Incident

12. On Friday, November 2, 2018, Kasula was conducting a math class just prior to the lunch period.

13. Dean was a student teacher in Kasula's classroom.

14. G.M. was a student[1] in Kasula's class.

15. While Kasula conducted the class, Dean, for no apparent reason, began repeatedly and sternly asking G.M. why, in Dean's opinion, he looked sad.

---

[1] G.M. has two older siblings (ages 15 and 16), who have been in the District their entire scholastic careers and are both "A" students.

16. G.M. stated he was fine and became increasingly confused and scared about the repeated and pointed questioning, especially since it was happening in the middle of class, by a person he hardly knew and seemingly out of nowhere.

17. For no valid reason, Dean asked G.M. to leave the classroom with her, but G.M. refused.

18. Without any cause, Dean then demanded that G.M. leave the classroom with her and she proceeded to remove G.M. from the classroom where she further interrogated him.

19. G.M. was frightened at this point, as it seemed to him that Dean was angry with him for some reason even though he hardly knew her.

20. Without provocation or foundation, Dean persistently questioned G.M. about his home life and if everything was okay at home.

21. At some point, Dean began asking G.M. inappropriate questions that appeared to gauge his religious and spiritual convictions and his level of patriotism towards the United States of America, ostensibly to determine if he, or his family, was a religious zealot or fanatic that was a threat to domestic security.

22. Those questions included:

    a. What religion is G.M.?

    b. Does G.M. believe in God?

    c. Does G.M. believe in Heaven?

    d. Does G.M. love America?

    e. Had any of G.M.'s relatives died?

    f. Does G.M. love his friends?

    g. Does G.M. love his school?

23. Dean also spoke to G.M. about her own spiritual beliefs and her thoughts on Heaven.

24. Against policy, Dean then used persistent questioning and an aggressive tone of voice to coerce G.M. into making a short, but ultimately false, statement that everything was not okay at home.

25. G.M. unequivocally states that he only said this to make Dean stop her persistent harassment of him.

26. G.M. was then returned to the classroom.

27. A short time later, Dean and Kasula ambushed G.M. on his way to lunch and ushered him away to a private, windowless room.

28. Sandrella was already present in this private, windowless room that, upon information and belief, is not typically used for student examinations.

29. Dean and Kasula, appearing angry, shut the door so that G.M. could not leave.

30. At this point G.M. was terrified and began to cry.

31. Other than Kasula, Dean, and Sandrella, no other District employees or members of the administration were present in the private, windowless room.

32. G.M. repeatedly asked to speak with his parents, however, his request was denied.

33. Against policy, G.M. was held against his will in this private, windowless room for a half hour or less.

34. During this time, and again in contravention to policy, Kasula and Sandrella then began physically examining G.M. against his will.

35. This physical examination included a strip search whereby G.M.'s pants were pulled down to his ankles and his shirt was pulled above his chest.

36. This physical examination also included the manhandling and probing of G.M.

37. Dean and Kasula then stated that they "were going to stay here until they heard what they wanted," which G.M. understood to mean that he was supposed to admit that his parents physically abused him in order to make this horrible ordeal and examination stop.

38. After being held in the room for a prolonged period of time against his will, G.M., under duress and coercion and wanting to be freed, falsely told Dean and Kasula what they had told him they wanted to hear, which was that his mother disciplines him with a belt.

39. After the strip search, probing and military-style interrogation, G.M. was then released back to his classroom.

40. G.M. missed his lunch period while being held against his will in the windowless, private room.

41. At the end of the day, a school counselor asked G.M. if he was okay and if he felt safe to go home.

42. G.M. indicated that he did and was then bussed home to his parents' house.

43. Neither Nail nor Amany were contacted by the Defendants about this incident or anything else related to the unfortunate events of that day.

44. Despite the principal not being present for the incident, G.M.'s Student Clinic Log for the day indicates that both the principal and the school counselor were present during the (strip) search and interrogation of G.M.

45. Instead, neither the principal nor the counselor were actually present during the incident, which is a direct violation of District policy.

46. The Student Clinic Log, a public record document, was created and falsified to intentionally mislead Plaintiffs and the public-at-large about what occurred on November 2 and the steps Defendants took to handle it.

47. G.M. returned to school the next week but was terrified to be in the presence of either Kasula or Dean.

48. Because of this, Nail and Amany repeatedly requested that the District separate G.M. form Dean and Kasula.

49. The District did not completely honor this request for nearly 5 months despite assurances otherwise.

50. Kasula treated G.M. poorly after the November 2 incident and put down his family in front of him.

51. Eventually, Nail called the police to intervene in the situation, as Defendants were further tormenting his son, which was causing G.M. significant emotional trauma.

52. This continued exposure to his tormentors worsened and exacerbated G.M.'s mental and physical issues that originated due to the initial November 2 strip search and related racially and religious based questioning.

53. G.M. was finally removed from Kasula's classroom in April 2019.

54. G.M. has been under the care of medial professionals related to the trauma of the November 2 incident and Defendants' subsequent related actions.

## COUNT I
## RECKLESSNESS AS TO DEFENDANT DEAN

55. Plaintiffs repeat and allege paragraphs 1 through 54 as though fully set forth herein.

56. As a student-teacher for the District and Board, Defendant Dean had a duty to adhere to the District's and Board's policies regarding investigations.

57. As a student-teacher for the District and Board, Defendant Dean owed a duty not to harm G.M.

58. Defendant Dean breached her duties by acting recklessly, wantonly, and in bad faith through her persistent and coercive interrogation of G.M.'s religious faith; questioning G.M.'s level of patriotism; stripping G.M.; and keeping G.M. falsely imprisoned during his strip search and interrogation.

59. As a direct and proximate result of Defendant Dean's recklessness, G.M. has suffered damages in an amount to be determined at trial.

## COUNT II
## RECKLESSNESS AS TO DEFENDANT KASULA

60. Plaintiffs repeat and allege paragraphs 1 through 59 as though fully set forth herein.

61. As a teacher for the District and Board, Defendant Kasula had a duty to adhere to the District's and Board's policies regarding investigations.

62. As a teacher for the District and Board, Defendant Kasula owed a duty to G.M. to adequately supervise Defendant Dean, who was student-teaching in Defendant Kasula's classroom.

63. As a teacher for the District and Board, Defendant Kasula owed a duty not to harm G.M.

64. Defendant Kasula breached her duties by acting recklessly, wantonly, and in bad faith through her supervision and oversight of Defendant Dean; persistent and coercive interrogation of G.M.'s religious faith; questioning G.M.'s level of patriotism; stripping G.M.; and keeping G.M. falsely imprisoned during his strip search and interrogation.

65. As a direct and proximate result of Defendant Kasula's recklessness, G.M. has suffered damages in an amount to be determined at trial.

## COUNT III
## RECKLESSNESS AS TO DEFENDANT SANDRELLA

66. Plaintiffs repeat and allege paragraphs 1 through 65 as though fully set forth herein.

67. As a student-nurse for the District and Board, Defendant Sandrella had a duty to adhere to the District's and Board's policies regarding investigations and student care.

68. As a nurse for the District and Board, Defendant Sandrella owed a duty not to harm G.M.

69. Defendant Sandrella breached her duties by acting recklessly, wantonly, and in bad faith through her persistent interrogation of G.M.'s religious faith; questioning G.M.'s level of patriotism; stripping G.M.; and keeping G.M. falsely imprisoned during his strip search and interrogation.

70. As a direct and proximate result of Defendant Sandrella's recklessness, G.M. has suffered damages in an amount to be determined at trial.

## COUNT IV
## FALSE IMPRISONMENT AS TO DEFENDANTS DEAN, KASULA, AND SANDRELLA

71. Plaintiffs repeat and allege paragraphs 1 through 70 as though fully set forth herein.

72. Acting within the course and scope of their employment with the District and the Board, Defendants Dean, Kasula, and Sandrella knowingly and intentionally caused G.M. to be confined and detained within a limited area against G.M.'s will and without probable cause or lawful justification.

73. Defendants Dean, Kasula, and Sandrella acted knowingly, intentionally, and deliberately, with malicious purpose, in bad faith, or in a reckless or wanton manner, warranting the imposition of exemplary punitive damages.

74. As a direct and proximate result of his false imprisonment, G.M. suffered damages in an amount to be determined at trial.

## COUNT V
## VIOLATION OF 42 U.S.C. §1983 – FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT AS TO DEFENDANTS DEAN, KASULA, AND SANDRELLA

75. Plaintiffs repeat and allege paragraph 1 through 74 as though fully set forth herein.

76. Acting under color of law and within the course and scope of their employment as employees of the District and the Board, Defendants Dean, Kasula, and Sandrella held G.M. against his will without probable cause or lawful justification in violation of G.M.'s rights guaranteed under the Fourth Amendment.

77. In causing G.M.'s detention, arrest, and being held against his will under the circumstances at issue, Defendants Dean, Kasula, and Sandrella acted wantonly, willfully, recklessly, without justification, and maliciously, warranting the imposition of exemplary punitive damages.

78. Faced with the circumstances present on November 2, 2018, reasonable employees would have, or should have, known that detaining and/or holding G.M. against his will violated G.M.'s clearly established Fourth Amendment rights.

79. As a direct and proximate result of his unlawful false imprisonment, G.M. has suffered damages in an amount to be determined at trial.

**COUNT VI**
**VIOLATION OF 42 U.S.C. §1983 – VIOLATION OF G.M.'S FIRST & FOURTEENTH AMENDMENT RIGHTS AS TO DEFENDANTS DEAN, KASULA, AND SANDRELLA**

80. Plaintiffs repeat and allege paragraph 1 through 79 as though fully set forth herein.

81. Acting under color of law and within the course and scope of their employment as employees of the District and the Board, Defendants Dean's, Kasula's and Sandrella's interrogation of G.M. as to both his religious faith and level of patriotism towards the United States of America was without lawful justification in violation of G.M.'s rights guaranteed under the First and Fourteenth Amendments.

82. In interrogating G.M. about his religious faith and level of patriotism towards the United States of America due to G.M.'s national origin, Defendants Dean, Kasula, and Sandrella acted

10

wantonly, willfully, recklessly, without justification, and maliciously, warranting the imposition of exemplary punitive damages.

83. Faced with the circumstances present on November 2, 2018, reasonable employees would have, or should have, known that such interrogation of G.M. violated his clearly established First and Fourteenth Amendment rights.

84. As a direct and proximate result of the violations of his rights under the First and Fourteenth Amendments, G.M. has suffered damages in an amount to be determined at trial.

## COUNT VII
## VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
## AS TO THE DISTRICT AND THE BOARD

85. Plaintiffs repeat and allege paragraphs 1 through 84 as though fully set forth herein.

86. Both the District and Board are recipients of federal funding.

87. G.M.'s national origin group is Palestinian.

88. As part of this group, G.M. has darker skin, darker hair, and is also Muslim.

89. As a result of G.M.'s national origins, the District and Board intentionally discriminated against G.M. by allowing him to be interrogated regarding his religious faith and levels of patriotism towards the United States of America.

90. The District and Board subsequently engaged in further intentional discriminatory conduct against G.M. by remaining deliberately indifferent to Plaintiffs' complaints of discrimination by not only failing to properly investigate them, but also by actively taking steps to cover up any discrimination.

91. As a direct and proximate result of the District's and Board's intentional discrimination, G.M. has sustained damages in an amount to be determined at trial.

## COUNT VIII
## VIOLATION OF 42 U.S.C. §1983 – CUSTOMS AND POLICIES OF THE DISTRICT AND BOARD CAUSING CONSTITUTIONAL VIOLATIONS AND RATIFICATION

92. Plaintiffs repeat and allege paragraphs 1 through 91 as though fully set forth herein.

93. Upon information and belief, the District and Board implemented otherwise facially valid customs and policies in such a manner that constitutional violations of the First, Fourth, and Fourteenth Amendments were likely to be and were visited upon students and their families, including Plaintiffs in this case.

94. Upon information and belief, the District and Board failed to adequately and properly train and/or supervise its employees, including Defendants Dean, Kasula, and Sandrella regarding the District's and Board's policies.

95. Upon information and belief, the District and Board's employees have a history of failing to follow the relevant policies regarding investigations.

96. Upon information and belief, the District and Board were aware of these violations.

97. The District and Board ratified this conduct, including the violations Defendants Dean, Kasula, and Sandrella committed, which led to violations of G.M.'s constitutional rights.

98. As a direct and proximate result of the District's and Board's customs and policies described herein, which violate the Fourth and Fourteenth Amendments on their face, or otherwise are applied in such a manner that First, Fourth, and Fourteenth Amendment violations are likely to and do occur, G.M. has suffered damages in an amount to be determined at trial.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS

99. Plaintiffs repeat and allege paragraphs 1 through 98 as though fully set forth herein.

100. Defendants' intentional and reckless conduct toward G.M. was extreme and outrageous.

101. Defendants intentionally and purposely engaged in this extreme and outrageous behavior by questioning G.M.'s religious beliefs and level of patriotism, as well as strip searching and interrogating G.M., without his parents present, in a private, windowless room in violation of District and Board policy.

102. The totality of Defendants' conduct towards G.M. was extreme and outrageous.

103. Defendants' unlawful conduct went beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities as G.M. has suffered significant physical and emotional injuries because of Defendants' emotionally disturbing conduct.

104. Defendants intended to cause G.M. severe and prolonged emotional distress, or at least should have known that the actions taken would result in such distress.

105. Defendants' extreme and outrageous intentional conduct towards G.M. has caused G.M. severe and debilitating emotional distress.

106. As a direct and proximate result of Defendants' conduct, G.M. has been damaged in an amount to be determined at trial.

## COUNT X
## LOSS OF CONSORTIUM

107. Plaintiffs repeat and allege paragraphs 1 through 106 as though fully set forth herein.

108. Nail and Amany are the parents and guardians of G.M.

109. Defendants' conduct with respect to G.M. has caused injuries and damages to G.M.

110. Defendants are liable for G.M.'s injuries.

111. As a result of G.M.'s injuries, caused by Defendants' actions, Nail and Amany have suffered from a loss of society, companionship, comfort, love, and solace.

112. Accordingly, as a direct and proximate result of Defendants' illegal conduct, Nail and Amany have sustained damages in an amount to be determined at trial.

## COUNT XI
## CIVIL CONSPIRACY

113. Plaintiffs repeat and allege paragraphs 1 through 112 as though fully set forth herein.

114. Defendants maliciously combined and conspired to cover up the various torts and constitutional violations they committed against G.M.

115. Defendants' conduct in their attempted cover up contributed to the damages G.M. has sustained.

116. As part of this unlawful conspiracy and attempted cover up, Defendants lied and tampered with public documents regarding their tortious conduct.

117. Defendants acted with the purpose of defrauding Plaintiffs in falsifying and tampering with the public records regarding their tortious actions committed against G.M.

118. Defendants' conduct is a violation of R.C. 2913.42.

119. As a direct and proximate result of Defendants' unlawful conspiracy, Plaintiffs have suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants accordingly:

A.) **Count I – Recklessness:** The Court grants judgment in G.M.'s favor and against Defendant Dean for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

B.) **Count II – Recklessness:** The Court grants judgment in G.M.'s favor and against Defendant Kasula for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

C.)  **Count III – Recklessness:** The Court grants judgment in G.M.'s favor and against Defendant Sandrella for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

D.)  **Count IV – False Imprisonment:** The Court grants judgment in G.M.'s favor and against Defendants Dean, Kasula, and Sandrella, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

E.)  **Count V – Violation of 42 U.S.C. §1983 – False Imprisonment in Violation of the Fourth Amendment:** The Court grants judgment in G.M.'s favor and against Defendants Dean, Kasula, and Sandrella, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

F.)  **Count VI – Violation of 42 U.S.C. §1983 – Violation of G.M.'s First and Fourteenth Amendment Rights:** The Court grants judgment in G.M.'s favor and against Defendants Dean, Kasula, and Sandrella, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

G.)  **Count VII – Violation of Title VI of the Civil Rights Act of 1964:** The Court grants judgment in G.M.'s favor and against the District and the Board, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

H.)  **Count VIII – Violation of 42 U.S.C. §1983 – Customs and Policies Causing Constitutional Violations and Ratification:** The Court grants judgment in G.M.'s favor and

against the District and the Board, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

I.) **Count IX – Intentional Infliction of Emotional Distress**: The Court grants judgment in G.M.'s favor and against Defendants, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that G.M. is made whole.

J.) **Count X – Loss Consortium:** The Court grants judgment in Nail's and Amany's favor and against Defendants, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that Nail and Amany are made whole.

K.) **Count XI – Civil Conspiracy:** The Court grants judgment in Plaintiffs' favor and against Defendants, jointly and severally, for an amount to be determined at trial, plus punitive damages, statutory interest, attorney fees, costs and other expenses incurred such that Plaintiffs are made whole.

L.) For any other relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial on all triable issues.

          Respectfully submitted,

          /s/ Matthew Abens
          DAVID L. HARVEY III (0080918)
          MATTHEW B. ABENS (0075308)
          JASON T. HARTZELL (0092458)
          Harvey Abens Iosue Co., LPA
          3404 Lorain Avenue
          Cleveland, OH 44113
          Phone: (216)651-0256

                                          Fax: (216)651-1131
                                          dvdharv@harvlaw.com
                                          mbabens@harvlaw.com
                                          jhartzell@harvlaw.com

*Counsel for Plaintiffs*